# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5791 | **DATE** | Oct. 12, 2001 |
| **CASE TITLE** | Glaxo v Apotex | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ n/a

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Memorandum opinion and order entered. Accordingly, plaintiff's motion to strike defendant's jury demand is granted.

(11) ▓ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | OCT 1 6 2001 | 47 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| GDS | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
OCT 1 6 2001

GLAXO GROUP LIMITED and SMITHKLINE )
BEECHAM CORP., )
)
Plaintiffs, )
)     No.     00 C 5791
v. )
)     Judge Robert W. Gettleman
APOTEX, INC., )
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Glaxo Group Ltd. and Smithkline Beecham Corp. (jointly, "plaintiff") have

brought an anticipatory patent infringement action seeking to enjoin the defendant Apotex's

importation and sale in the United States of generic cefuroxime axetil tablets until expiration of

plaintiff's patents. Defendant has answered the amended complaint, raising affirmative defenses

of invalidity and noninfringement, and asserted a counterclaim seeking declaratory judgment of

invalidity and noninfringement. Defendant has demanded a jury on all issues. Plaintiff has

moved to strike defendant's jury demand. For the reasons set forth below, plaintiff's motion is

granted.

### Background[1]

Plaintiff is the owner of U.S. Patent Nos. 4,562,181 (the "181 patent") and 4,820,833 (the

"833 patent") which cover amorphous cefuroxime axetil, and is the holder of a New Drug

---

[1]A complete description of the case can be found in the court's previous opinion, Glaxo
Group Ltd. v. Apotex, Inc., 130 F. Supp. 2d 1006.

47

Application ("NDA") for the antibiotic sulfur cefuroxime axetil tablets, which is covered by the patents and sold by plaintiff under the brand name Ceftin.

On April 5, 2000, defendant filed an Abbreviated New Drug Application ("ANDA") with the Food and Drug Administration ("FDA"), seeking approval to market a generic cefuroxime axetil product in the United States. Plaintiff filed the instant lawsuit five months later, seeking a declaratory judgment that defendant's product will infringe the 181 patent and that defendant's filing of the ANDA infringes the 181 patent under 35 U.S.C. § 271(e)(2). After receiving a copy of defendant's ANDA through discovery, plaintiff sought and was granted leave to file an amended complaint asserting that defendant's manufacturing process for its proposed generic version is covered by the 833 patent. Plaintiff seeks a declaratory judgment of infringement of the 833 patent and an injunction enjoining infringement of that patent. Neither the original nor the amended complaint alleges that defendant has or is currently engaged in the commercial manufacture, use, offer to sell or sale within the United States or importation into the United States of its generic sulfur cefuroxime product as would be required for plaintiff to recover damages under 35 U.S.C. § 271(a) or § 271(e)(4). Thus, the only relief to which plaintiff is entitled is declaratory and injunctive. Defendant has answered the amended complaint, asserting affirmative defenses and counterclaims for a declaration of invalidity and noninfringement of the two patents. Defendant seeks a jury on all issues.

## Discussion

The Seventh Amendment to the United States Constitution guarantees litigants the right to a jury trial in suits at common law. Whether a right to a jury attaches to a particular case turns on whether the case "is more similar to cases that were tried in courts of law than to suits tried in

courts of equity or admiralty." Tull v. United States, 481 U.S. 412, 417 (1987). The phrase

"Suits at common law 'refers to suits in which legal rights are to be ascertained and determined,

in contra distinction to those where equitable rights alone are recognized and equitable remedies

are administered.'" Chauffeurs, Local No. 391 v. Terry, 494 U.S. 558, 563 (1990) (quoting

Parsons v. Bedford, 3 Pet. 443, 447, 7, 7 L.Ed. 732 (1830)). To determine whether a particular

action will resolve legal rights, the court must examine both the nature of the issues involved and

the remedy sought. "First, we compare the statutory action to the 18th Century actions brought in

the courts of England prior to the merger of the courts of law and equity. Second, we examine

the remedy sought and determine whether it is legal or equitable in nature." Id. (quoting Tull,

481 U.S. at 417-18). The second inquiry is the more important in the analysis. Id.

The instant action involves a claim seeking to enjoin a future infringement, and a claim of

technical or artificial acts of infringement (submission of an ANDA), in which plaintiff seeks

injunctive relief with no claim for damages available. Defendant raises invalidity issues as

affirmative defenses and as a counterclaim. Although the Federal Circuit has issued a number of

opinions dealing with the right to a jury trial in infringement actions with invalidity defenses,

there is no binding precedent comparing the exact issues raised in the instant action with those

arising in 18th Century England.

In support of its position that defendant has no right to a jury on its defense and

counterclaim of invalidity, plaintiff relies on Tegal Corp. v. Tokyo Electron America, Inc., 257

F.3d 1331 (Fed. Cir. 2001), the Federal Circuit's most recent decision on the issue. In Tegal, the

patentee sued the defendant for patent infringement, seeking injunctive relief and damages. The

defendant asserted affirmative defenses including invalidity, but no counterclaim. Six days

3

before trial, the plaintiff dropped its claim for damages with the understanding that it would lose

its right to trial by jury. The district court issued an order that the trial would proceed without a

jury. The defendant filed a motion to reconsider that order, which was also denied. After a

bench trial, the court found that the patents were not invalid, and the defendant had infringed.

The defendant appealed a number of rulings, including the denial of its claimed right to a jury.

On appeal, the Federal Circuit described the issue before it as "whether a defendant,

asserting only affirmative defenses and no counterclaims, has a right to a jury trial when the only

remedy sought by the plaintiff-patentee is an injunction." Id. at 1339. In reaching its decision

that there is no right to a jury under such circumstances, the court applied the two part Tull test.

In analyzing the first part of the Tull inquiry - - an examination of the nature of the action

involved - - the court relied on the reasoning in its previous opinion in In re Lockwood, 50 F.3d

966 (Fed. Cir. 1995), vacated, 515 U.S. 1182 (1995), which had been vacated by the Supreme

Court, but the reasoning of which the Federal Circuit held remained "pertinent." Tegal, 257 F.3d

at 1340. After reviewing the Lockwood decision, the Tegal court concluded that the nature of the

plaintiff's action was purely equitable. Id. at 1341. The Tegal court then stated that little

analysis was required for the second and most important prong of the Tull test - - the nature of

the remedy sought. The plaintiff sought only an injunction. Considering the two prongs, both of

which pointed to equity, the Tegal court concluded that neither party had a right to a jury. Id.

In contrast, defendant relies on the reasoning of In re SGS-Thomsom Microelectronics,

Inc., 60 F.3d 839 (Fed. Cir. 1995), an unpublished Federal Circuit opinion, issued after and

4

relying upon <u>Lockwood</u>, but before <u>Tegal</u>, and of which <u>Tegal</u> makes no mention.[2]  In <u>SGS-Thomson</u>, the plaintiff sued the defendant for patent infringement, seeking only equitable relief. The defendant asserted its defenses and counterclaim for declaratory judgment of noninfringement, invalidity and unenforceablity.  The defendant demanded a jury trial on the counterclaims.  The district court granted the plaintiff's motion to strike the jury demand without explanation.  After the Federal Circuit's decision in <u>Lockwood</u>, the defendant moved to reconsider, which was again denied.  Defendant then petitioned the Federal Circuit for a writ of mandamus.  The Federal Circuit held that the defendant had a right to a jury on the counterclaim, concluding that under the <u>Lockwood</u> analysis, had defendant initiated the action by bringing suit for a declaration of invalidity, it would have been entitled to a jury.  <u>Id</u>.

At the heart of the Federal Circuit's decisions in <u>Tegal</u> and <u>SGS-Thomson</u>, is its vacated opinion in <u>Lockwood</u>, in which the plaintiff sued the defendant for patent infringement seeking both damages and injunctive relief.  The plaintiff demanded a jury trial.  The defendant raised invalidity as an affirmative defense and in a counterclaim for a declaration of noninfringement and invalidity.  The court granted the defendant's motion for summary judgment of noninfringement, dismissed the infringement complaint, and then struck the plaintiff's demand that the issue of validity be tried to a jury.  The plaintiff sought a writ of mandamus on the jury issue.  The Federal Circuit issued the writ initially, holding that "[plaintiff's] underlying claim for infringement and damages is the basis of the action at the district court and the claim for

---

[2]Federal Circuit Rule 47.6(b) provides that unpublished opinions "must not be employed or cited as precedent."

infringement damages and any asserted defenses still exist in the case." Lockwood, 50 F.3d at 969.

On petition for rehearing, the court issued the opinion that has formed the basis of its later opinions in Tegal and SGS-Thomson. In analyzing the patentee's right to a jury, the Lockwood court first determined that an action for declaratory judgment was only as legal and equitable in nature as the controversy on which it was founded. Therefore, because the declaratory judgment action itself is neither legal nor equitable, the historical inquiry required by the Seventh Amendment takes as its object the nature of the underlying controversy. Thus, the court had to "determine how patent validity was adjudicated prior to the merger [of courts of law and equity] and absent the declaratory judgment procedure." Id. at 973.

In making this determination, the Lockwood court first noted that prior to the Declaratory Judgment Act, neither party had available to it a procedure to test the validity of a patent. Instead, a worried party could only wait for the patentee to bring an infringement action and then raise the patent's invalidity as an affirmative defense. "Patent validity simply was not litigated in isolation from an infringement action." Id. at 974. The court then held that the defendant's counterclaim for invalidity "resembles nothing so much as a suit for patent infringement in which the affirmative defense of invalidity has been pled, and [plaintiff's] right to a jury trial must be determined accordingly." Id. The only difference between the defendant's counterclaim and the traditional infringement suit with an invalidity defense that prior to the Declaratory Judgment Act would have been required for an adjudication of invalidity, is that the position of the parties had been inverted. Such an inversion, the court said, could not operate to frustrate the plaintiff's Seventh Amendment rights. Id.

Therefore, the court proceeded to determine what right to a jury trial the plaintiff "would have enjoyed had the validity of his patents been adjudicated in a suit for patent infringement according to 18th Century English practice," explaining, Id. at 976 (citations omitted) (emphasis in original):

> The choice of forum and remedy, and thus the method of trial was left with the patentee. Nineteenth Century American practice followed the same basic pattern. If the patentee sought only damages, the patentee brought an action at law; in such a case the defense of invalidity was tried to the jury, assuming that a jury had been demanded. However, if the patentee facing past acts of infringement nevertheless sought only to enjoin future acts of infringement, the patentee could only bring a suit in equity, and the defense of invalidity ordinarily would be tried to the bench. Under both English and American practice, then, it was the patentee who decided in the first instance whether a jury trial on the factual questions relating to validity would be compelled.

The court concluded, therefore, that the plaintiff could not be denied the choice of a jury on the validity issue simply because the case came before the court as a declaratory judgment action for invalidity rather than as a defense in an infringement action. Id.

At first glance, Lockwood and SGS-Thomson would appear to support the position that patent validity, no matter how it is raised, is a legal issue that entitles either party to a jury. Because the later holding in Tegal refutes that position, however, defendant argues that it is entitled to a jury because it has raised invalidity in a counterclaim rather than solely in an affirmative defense as in Tegal. The unpublished opinion in SGS-Thomson appears to support this argument, but is of non precedential value. Federal Circuit Rule 47.6(b). Moreover, Lockwood clearly holds that the manner in which the issue comes before the court is not controlling, and that inversion of the parties cannot act to deny the patentee the choice.

In any event, neither Lockwood, SGS-Thomson, nor Tegal squarely addressed the issue before this court, because in each of those cases the patentee had a claim for damages, meaning

that in 18th Century England the infringement suit could have been brought in a court of law. In the instant action, plaintiff can bring no claim for damages for infringement because defendant has not yet marketed or sold its product. Moreover, plaintiff's claim under § 271(e)(2)(A) is premised solely on defendant's submission of an ANDA to the FDA, which is considered a "technical" or "artificial" act of infringement that Congress created to provide patentees with a defined act of infringement sufficient to create case or controversy jurisdiction to enable a court to resolve any dispute concerning infringement and validity promptly. Glaxo, Inc. v. Novopharm, Ltd., 110 F.3d 1562, 1569 (Fed. Cir. 1997). The statute expressly precludes a plaintiff from recovering damages unless the defendant has already engaged in the commercial manufacture, use or sale of the drug without FDA approval. 35 U.S.C. § 271(e)(4).

Despite these obvious differences, at least two district courts have relied on Lockwood to hold that a defendant is entitled to a jury on its counterclaim of invalidity when the plaintiff's infringement action was solely for injunctive relief pursuant to § 271(e)(2), because the defendant could have initiated a declaratory judgment for invalidity under § 271(a) rather than filing a counterclaim to the infringement action brought under § 271(e)(2). Hoechst Marion Roussel, Inc. v. Par Pharmaceutical, Inc., 1996 WL 468593 at *3 (D.R.D. 1996); Warner-Lambert Co. v. PurePac Pharmaceutical Co., 2001 WL 883232 (N. N.J. 2001).

In contrast, in an analogous case not directly on point, Judge Kocoras of this district has held that a plaintiff in an action brought solely pursuant to § 271(e)(2) is not entitled to a jury on the defendant's affirmative defense of invalidity. Pfizer Inc. v. Novopharm Ltd., 2001 WL 477163 (N.D. Ill. 2001). After reviewing the relevant case law on the jury issue, as well as actions under § 271(e)(2), Judge Kocoras held that even under the non-precedential Lockwood

8

analysis, the parties are not entitled to a jury trial in an infringement action of this sort, stating,

Id. at *3 (emphasis in original):

> As the Federal Circuit observed in [Lockwood] 'declaratory judgment actions are, for Seventh Amendment purposes, only as legal or equitable in nature as the controversies on which they are founded.' The controversy in the instant case is not the inversion of a traditional infringement lawsuit as was the declaratory judgment suit in Lockwood. Rather, it is a controversy of recent vintage created by Congress for the specific purpose of posturing drug patent claims for adjudication before actual infringement occurs. As such, it is inherently equitable, and the remedies are limited accordingly.

This court agrees with the analysis in Pfizer that an action brought pursuant to § 271(e)(2) is inherently equitable in nature, and that the remedies are limited accordingly. Therefore, as in Tegal, both prongs of the Tull test point to equity, and neither plaintiff nor defendant is entitled to a jury on any of the issues raised in this case. The mere fact that invalidity has been raised in a counterclaim rather than in an affirmative defense does nothing to change this characterization. Unlike in Lockwood, SGS-Thomson or even Tegal, plaintiff in the instant action has no ability to bring a legal claim, because defendant has not made, used, offered to sell, or sold a patented invention without authorization in violation of 35 U.S.C. § 271(e). Therefore, this court respectfully disagrees with the statement in Hoeschst that the defendant could have instituted its declaratory judgment action under § 271(a) rather than as a counterclaim to the § 271(e) action. As Lockwood points out, in 18th Century England, the validity of a patent where there was no claim for damages was equitable in nature and decided by the court. Accordingly, defendant's motion to strike plaintiff's jury demand is granted.

9

## Conclusion

For the reasons set forth above, plaintiff's motion to strike defendant's jury demand is granted.

ENTER:     October 12, 2001

Robert W. Gettleman
United States District Judge